IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **MICHAEL O. LONG**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **3:12-cv-02706-AKK** |
| **PILGRIM'S PRIDE** ) | |
| **CORPORATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Michael O. Long, an African American male, pursues this claim against Pilgrim's Pride Corporation for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Doc. 1 at 8, 10. Long alleges that Pilgrim's Pride denied him a transfer to the maintenance department and ultimately discharged him because of his race. Pilgrim's Pride's motion for summary judgment, doc. 16, is before the court and is fully briefed and ripe for review, docs. 19, 20, 22. Based on a review of the evidence and the law, the court finds that Long failed to establish that he bid on a vacancy in the maintenance department or that Pilgrim's Pride allowed employees outside his protected class to transfer without bidding for a position. Likewise, Long failed to establish that

1

Pilgrim's Pride failed to discharge employees outside his protected class who engaged in the same infraction as Long—i.e. violation of the rules on clocking in and out for lunch. Therefore, in light of Long's failure to meet his burden on his claims, Pilgrim's Pride's motion is due to be granted.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiffs' favor when sufficient competent evidence supports Plaintiffs' version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL ALLEGATIONS

### A. Long's Employment with Pilgrim's Pride

Long began his employment with Gold Kist, Pilgrim's Pride's predecessor,

Case 3:12-cv-02706-AKK   Document 23   Filed 10/31/13   Page 4 of 18

in March 2003 in the tub wash department. Doc. 16-2 at 9. Long earned a promotion to the sanitation department about five months later, *id.*, and worked there until his discharge in 2011.

This case is based in part on Long's contention that Pilgrim's Pride denied him a position in its maintenance department because of his race. To increase his chances of obtaining a transfer to the maintenance department, on those weekends when he did not have to work in the sanitation department, Long did additional work with the maintenance department. *Id*. According to Long, if non-maintenance department employees performed maintenance work on the weekends, Pilgrim's Pride allowed them to transfer into the department when a position became available without having to bid for the position. Doc. 20-2 at 4. Pilgrim's Pride disputes this contention and maintains that it posted all vacancies in its maintenance department so that interested employees could "bid." Doc. 16-4 at 4. Thereafter, Pilgrim's Pride screened the applicants and selected some, along with candidates from the outside, for interviews. *Id*. Pilgrim's Pride contends that if a maintenance department manager filled a position with an employee who failed to formally bid for it, the manager would be subject to discipline. Doc. 16-5 at 11.

Long alleges that Pilgrim's Pride denied him maintenance positions during

4

the 2008–2011 time frame. At some point between 2008 and 2010, Pilgrim's Pride apparently filled three maintenance positions with white males. Doc. 19 at 6. Long testified that he formally bid for one of these positions, but could not indicate exactly when or for what position. Doc. 16-2 at 16. In any event, Long believed his race factored in his failure to receive one of these positions, and as a result, complained to a human resources department employee. Doc. 20-2 at 4. However, Long ultimately "told [the employee] not to worry about it, and . . . did not pursue the issue." *Id*. Long also contends that he should have received one of at least six maintenance positions Pilgrim's Pride posted in 2011, even though he did not formally bid for any of these positions, because "it had been represented to him that he would receive the job." Doc. 19 at 6–7.

   *B. Long's Termination*

On Sunday, July 31, 2011, while in route to work, Pilgrim's Pride's Human Resources Director, Lori Williams, passed Long and Robert Pride on the highway driving away from the facility. Doc. 16-1 at 7–8. Earlier that month, Williams discharged Kryshlyn Pinchon, a white female maintenance department employee, for leaving work for extended periods without clocking out. Doc. 16-5 at 4–5. Although Pinchon refused to identify specific individuals, she told Williams that other Pilgrim's Pride employees frequently left work without clocking out. *Id*. at 4.

5

Consequently, when Williams saw Long and Pride driving away from the facility, Williams thought they might be some of the employees Pinchon claimed also left work for extended periods. In light of her suspicions, Williams checked Long's time card the next day and determined Long had not clocked out when she saw him driving on the highway.[1] *Id*. at 8. When Williams confronted Long, he told her he never clocked out for lunch on the weekend, doc. 16-2 at 20–21, and gave her the names of other employees whom he alleged behaved similarly, doc. 16-1 at 8. Williams suspended Long and the other employees Long named, pending further investigation. *Id.*

As part of her investigation, Williams reviewed security camera footage, and learned that a week earlier, Long and a coworker left the facility for more than two hours without clocking out. *Id*. at 9. Footage from the same day also showed Long using his cell phone to make calls and send text messages while sitting in a break room. *Id*. Pilgrim's Pride maintains that Long was not entitled to a break on that day because his Sunday shifts lasted only five to six hours. *Id.* Based on Williams' investigation, she and the Complex Manager, Scott Varner, decided to discharge Long because they believed his actions, namely leaving the facility for extended periods of time while still on the clock and using his cell phone while on

---

[1] Williams also investigated Pride and reached a similar conclusion. Doc. 16-5 at 10.

the clock, violated company policy.[2] Doc. 20-2 at 10.

Although Long admits leaving the facility without clocking out, he asserts that his discharge was racially discriminatory because employees who performed maintenance work on the weekends never clocked out when they left work for lunch, and that he was merely following standard practice. Doc. 19 at 8. Two of Long's former coworkers corroborated this claim. *See* doc. 20-3 at 2 (sworn affidavit of Robert Pride, an African American male (who was in car with Long on July 31 and was also discharged) stating that he never clocked out when he took a short lunch break while performing maintenance work on the weekends); doc. 20-4 (sworn affidavit of Earl King, an African American male, stating that workers who performed maintenance on the weekends did not clock out because the company automatically deducted 30 minute for lunch from their time cards). Additionally, Long denies being absent from the facility for over two hours on July 24, 2011, and maintains instead that he returned to the facility and worked in an area not monitored by security cameras. Doc. 19 at 10. With regards to Williams' findings concerning his cell phone use, Long states that "the majority of the individuals working at the plant . . . used their cell phones [while on break] and

---

[2] Pilgrim's Pride also discharged four additional employees—Pinchon, who is a white woman, Pride, an African American man, and two Hispanic men—as a result of Williams' investigations into time clock violations. Doc. 16-5 at 10.

suffered no adverse employment consequence[s]." Doc. 20-2 at 6.

### III. ANALYSIS

Long claims Pilgrim's Pride denied him a position in the maintenance department and discharged him because of his race. Generally, "[a] plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008). Where, as here, a plaintiff offers only circumstantial evidence, he bears the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). In that respect,

> [t]o allege facts establishing a prima facie case of race discrimination under Title VII based on circumstantial evidence, the plaintiff must demonstrate that: '(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class.'

*Smith v. CH2M Hill, Inc., et al.*, 521 F. App'x 773, 775 (11th Cir. 2013) (quoting *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). "The successful assertion of a prima facie case then creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff." *Rioux,* 520 F.3d at 1275 (11th Cir. 2008) (citations omitted) (internal quotation marks omitted). The burden then shifts to the employer to produce evidence that it had a legitimate non-

8

discriminatory reason for the challenged action. *Id*. If the employer satisfies its burden, the burden shifts back to the plaintiff to "show that the proffered reason really is a pretext for unlawful discrimination." *Id*. (citations omitted) (internal quotation marks omitted).

### A. Failure to Transfer

Pilgrim's Pride argues that Long cannot establish a prima facie case of discriminatory treatment stemming from its failure to transfer him to its maintenance department because Long failed to show that it transferred similarly situated employees outside his protected class even though they never bid for a vacant position. According to Long, however, Pilgrim's Pride allowed two non-African American individuals to bypass the formal bid process:

> [F]rom time to time if one job was available [in maintenance], and if a worker had been working weekends on maintenance and wanted the position, then they would be transferred whether they signed up for the position or not. It is my belief that examples are Brian Ridgeway, a white male, in or about 2010, and Ms. Summers,[3] a white female, whose first name I do not recall, in or about 2011.

Doc. 20-2 at 4. While normally such a contention might be sufficient to create a triable issue, to defeat summary judgment, Long must present more than just his "belief." *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (stating that

---

[3] Pilgrim's Pride identified "Ms. Summers" as Sommer Barnes. Doc. 22 at 2.

"statements in affidavits that are based, in part, on information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment") (citing *Pace v.Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir. 2002)); *see also Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (stating that "unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion") (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)). This need for concrete evidence is especially significant when, as here, Pilgrim's Pride has presented evidence to rebut Long's contentions. Specifically, Pilgrim's Pride asserts that it hired Ridgeway from "outside the Company directly into the maintenance department." Doc. 22 at 2–3. Although Long is obviously correct that Ridgeway did not "bid" laterally for the position, he could not have since he was not an employee. *Id.* Moreover, as an outside hire, Ridgeway was not subjected to the internal formal bid process. *Id*. Pilgrim's Pride also presented evidence that, contrary to Long's contention, Barnes actually bid for a position in the maintenance department, a fact confirmed by the bid sheet. Doc. 22-1 at 2–3, 5. This evidence is sufficient for Pilgrim's Pride to rebut Long's "belief" that Pilgrim's Pride informally transferred Ridgeway and Barnes, or other employees, to maintenance positions. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998) (stating that an

employer in these circumstances "need only produce evidence that could allow a rational fact finder to conclude that [its decision] was not made for a discriminatory reason"). Therefore, Long's discriminatory failure to transfer claim fails.[4]

### B. Discriminatory Discharge

Pilgrim's Pride argues next that Long fails to establish a prima facie case for his termination claim because he cannot identify similarly situated individuals outside of his protected class who received more favorable treatment and because Pilgrim's Pride replaced him with a member of his protected class. The court agrees for the reasons stated below.

### 1. Replaced by someone in the same protected class.

---

[4] Long also identified two other instances when he believes Pilgrim's Pride passed over him for a position in the maintenance department: when Pilgrim's Pride hired three white men into the department at some point between 2008 and 2010, doc. 19 at 6, and when it did not select him for one of six available positions in 2011, *id.* at 6–7. Although Long testified that he submitted a bid for one of the pre-2011 positions, doc. 16-2 at 16, he failed to indicate when or for which position, and failed to present any evidence that he was equally qualified as the person selected or that Pilgrim's Pride denied him the position because of his race. *See Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000). Moreover, since Long filed his EEOC charge on August 26, 2011, he simply cannot challenge decisions made before February 27, 2011. As such, his claims, if any, regarding the 2008–2010 positions fail. Finally, by his own admission, he did not bid for any of the positions posted in 2011. Doc. 19 at 7. Consequently, he cannot argue that Pilgrim's Pride treated him less favorably than other employees who participated in the bid process. In the final analysis, Long does not claim that Pilgrim's Pride allowed anyone in these two instances to bypass the formal bid process and transfer directly into the maintenance department. Therefore, as to these two instances, Long has failed to present evidence that Pilgrim's Pride treated him less favorably than a similarly situated individual outside of his protected class.

11

The evidence before the court is that Antonio Bonds, an African American male, replaced Long by assuming Long's tasks. Doc. 16-1 at 15; doc. 19 at 14. Long asks the court to overlook this fact and to find instead that only a "new" hire can replace a terminated employee. However, Long offers no legal justification for his request, and, in any event, it is not supported by case law. *See Richardson v. Ala. Pine Pulp Co., Inc.*, 277 F. App'x 907, 908–09 (11th Cir. 2008) (finding that the plaintiff failed to establish a prima facie case of race discrimination when her duties were assumed by two employees on her shift, one African American, one white, following her termination).

>  2. Failed to identify similarly situated employees treated differently.

Long seeks to rebut Pilgrim's Pride's contention that he cannot identify any similarly situated employees by broadly asserting that none of the employees who performed maintenance work on the weekends clocked out for lunch. Doc. 19 at 8. However, Long does not identify any non-African American employees whom purportedly engaged in such conduct and whom were not terminated.[5] As Long

---

[5] Two of Long's former co-workers submitted affidavits supporting Long's contention that workers performing maintenance on the weekends did not clock out for lunch. *See* doc. 20-3 (sworn affidavit of Robert Pride); doc. 20-4 (sworn affidavit of Earl King). Neither, however, presented evidence of someone outside Long's protected class receiving more favorable treatment. Pilgrim's Pride discharged Pride, an African-American male, for the same type of time clock violation as Long. In fact, according to Pilgrim's Pride, Pride left work with Long on July 31, 2011, doc. 16-1 at 12, although in his affidavit Pride does not admit leaving the plant and

acknowledges, Pilgrim's Pride simply did not have the evidence to justify more terminations: "other employees were reviewed concerning the time clock issue, including other than African-Americans who were not terminated because according to [Pilgrim's Pride] *the evidence did not establish a violation of work rules*." Doc. 19 at 14 (emphasis added). While Long may disagree with this contention, the court's role is not to second guess an employer's personnel decisions, *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010), especially where, as here, Pilgrim's Pride presented evidence that it also discharged other employees whom evidence indicated engaged in the same conduct as Long.

Likewise, Long's claim that most of his coworkers used their cell phones at work without being disciplined, doc. 20-2 at 6, faces the same evidentiary pitfalls, i.e. he fails to specifically identify the non-African American employees who engaged in such conduct. Long also ignores that his discipline centered on use of his cell phone during an alleged unauthorized work break. According to Pilgrim's Pride, security footage showed Long in the breakroom taking a break (after

---

"deni[es] doing anything wrong," doc. 20-3 at 3. As for King, he stated that he never clocked out on the weekends because he believed Pilgrim's Pride automatically deducted a 30-minute lunch break from his time. Doc. 20-4 at 3. However, King did not state that he left the plant during these breaks or that he took more than 30 minutes for lunch. In any event, his 30 minute lunch breaks were significantly shorter than the two hour period Long allegedly left the plant on July 24, 2011.

purportedly leaving the plant for two hours) and using his cell phone even though he was not entitled to a break on Sundays. Long never addressed this contention regarding his entitlement to a break. As a result, it is unrebutted. Consequently, absent an allegation by Long that other Sunday employees also used their phones during unauthorized work breaks, Long's contentions that other employees may have also used their cell phones at work do not establish that Pilgrim's Pride treated him differently because of his race.

Based on the record before this court, Long failed to show that Pilgrim's Pride treated him less favorably than a similarly situated individual outside of his protected class or that it replaced him with an individual outside his protected class. Accordingly, he cannot establish a prima facie case of discriminatory termination.

> 3. <u>Failed to establish that Pilgrim's Pride's articulated reason is pretextual</u>.

Alternatively, summary judgment is due on the termination claim because Long failed to rebut Pilgrim's Pride's non-discriminatory reason for his discharge. According to Pilgrim's Pride, Long "was terminated solely because of his violation of [Pilgrim's Pride] policies, specifically the rules on clocking in and out." Doc. 16-1 at 20. Long can only survive summary judgment if he shows that

Pilgrim's Pride's reason is pretextual. To do so, Long must "provide sufficient evidence to allow a reasonable fact finder to conclude that [Pilgrim's Pride's] proffered reasons were not actually the motivation for his [termination]." *Standard*, 161 F.3d at 1331. Long cannot make such a showing, in part, because Pilgrim's Pride also discharged four other employees as a result of Williams' investigation into time clock violations: Pinchon, a white female; Pride, an African-American male, Cudberto Mojica, a Hispanic male; and Samuel Garcia, also a Hispanic male. Doc. 16-1 at 20. To get around the undisputed fact that non-African Americans received the same discipline, Long focuses solely on Pinchon and attempts to distinguish her termination by contending that she "did not work on the weekends, and ran personal errands while on the clock." Doc. 19 at 13. Unfortunately for Long, the day Pinchon's violation occurred and what Pinchon did when she left the facility are irrelevant to whether Pilgrim's Pride discharged her for the same infraction as Long. After all, even if Long left work only to pick up a lunch, and did not run "personal errands" like Pinchon, Long still left work without clocking out. Ultimately, the fact that Pilgrim's Pride discharged multiple employees for the same reason and within the same time frame undermines Long's contentions that Pilgrim's Pride targeted him because of his race.

  Likewise, Long's contention that his admitted behavior—leaving Pilgrim's

Pride's facility for a short period while working on the weekend and using his cell phone while on breaks— did not violate Pilgrim's Pride policy is also unavailing. To support his contention, Long testified that different managers gave him and his fellow employees conflicting instructions regarding clocking in and out for lunch, doc. 16-2 at 18, 21, and presented testimony from other employees stating that they also left work or took lunch breaks without clocking out first, *see* doc. 20-3 at 2 (sworn affidavit of Robert Pride stating that he never clocked out when he took a short lunch break while performing maintenance work on the weekends); doc. 20-4 (sworn affidavit of Earl King stating that workers who performed maintenance on the weekends did not clock out because a 30 minute lunch break was automatically deducted from their time); *see also* doc. 16-2 at 18, 21 (transcript of Long's deposition in which he describes the frequent use of cell phones by Pilgrim's Pride employees). However, even if Long is correct that his actions reflected instructions he received from some Pilgrim's Pride supervisors and that his termination was consequently unfair, those facts alone do not support his assertion that the reason for his termination was a pretext for racial animus. As the Eleventh Circuit has explained repeatedly, a plaintiff's "assertions that the allegations [of insubordination] against him are untrue . . . present no relevant proof that his termination was in fact a pretext for race . . . discrimination."

16

*Kelliher v. Veneman*, 313 F.3d 1270, 1276 n. 8 (11th Cir. 2002); *see also Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 567 (11th Cir. 1992) (stating that even if the defendant made an erroneous determination, "its error in that determination would not be a basis for claiming age discrimination") (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)). While Long may be correct in asserting that Pilgrim's Pride treated him unfairly by discharging him for following a practice condoned by some supervisors, the question for this court to resolve is not "whether the decision to fire [him] was 'prudent or fair.' Instead, 'our sole concern is whether unlawful discriminatory animus motivate[d]' the decision." *Alvarez*, 610 F.3d at 1266 (internal citations omitted) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002)). Where, as here, Long admits he engaged in the conduct cited for his discharge and presents no evidence other than his personal beliefs that racial animus factored into his discharge, *see e.g.*, doc. 16-2 (transcript of Long's deposition in which he agrees that his assertions of racial discrimination are based on his "personal feeling[s]"), his claim fails as a matter of law.

### IV. CONCLUSION

For the reasons stated fully above, Long has failed both to present a prima facie case, or to demonstrate that Pilgrim's Pride's asserted reasons for the

employment actions he challenges are pretextual. Therefore, the court finds that Pilgrim's Pride's motion is due to be granted.

**DONE** this 31st day of October, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE